## M. E. TRUMER v. SOUTH SIDE STATE BANK.[1]

### January 18, 1918.

### No. 20,851.

**Bank and banking — statutory limitation inapplicable to Federal bonds.**

By G. S. 1913, § 6358, providing that the total liabilities of any person, corporation or copartnership to a state bank shall never exceed 15 per cent of its capital and surplus, it was not intended to limit the amount of bonds of the United States that a state bank might purchase or hold.

Action in the district court for Hennepin county by a stockholder of defendant bank to compel it to sell United States government bonds owned by it in excess of 15 per cent of its combined surplus and capital. Defendant's motion for judgment in its favor on the pleadings was granted, Leary, J., who made findings and dismissed the action. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*L. B. Byard,* for appellant.

In enacting G. S. 1913, § 6388, the legislature had in view a purpose similar to that attained in statutes requiring common carriers to serve all persons without discrimination. In limiting the credit to be extended to a single individual the statute accomplishes two purposes. It prevents

[1]Reported in 166 N. W. 127.

not only a reckless extension of credit, but it also insures in a large measure a fair and equitable distribution of the bank's credit facilities to those members of the community, who in a commercial sense subsist upon such credit. This does not have reference to the banks of Minneapolis and St. Paul, but to the rural bank whose ability to lend is far less than its patrons' need to borrow. It is well known that such banks are large borrowers from metropolitan banks. It is highly important, therefore, that no one shall be permitted to monopolize the credit facilities of a rural bank. The economic and industrial needs of village and agricultural communities demand that the power of such banks to lend may be made use of by as large a number as possible of those who have a legitimate right to borrow.

A commercial bank is an instrument of business. It is therefore more than a mere bailee of money. It is not an accumulator of funds for safe investment. It is rather an institution where money is concentrated for immediate redistribution.

When interpreted in this light, there can be no anomaly in holding that the statute prevents banks from loaning more than the prescribed amount even to the Federal government. In times like the present the economic security of the small community is as much an object of concern to that government as is the prosperity of the nation. In conserving the parts we conserve the whole.

The fact that bonds of the state and of the United States are omitted is striking. The legislature had before it the question of the extent to which banks should be allowed to purchase public securities. The fact that they are not mentioned in the list of like securities shows that the omission was intentional. It is also to be said that in excepting obligations of municipal corporations from the operation of the act, the legislature was using the word "corporation" to include governments. Will the respondent say that statute does not apply to the bonds of foreign municipalities? If he is consistent he must answer no.

It is claimed, if appellant's construction of the statute be adopted, the act is unconstitutional as an unwarranted obstruction of the power of the Federal government to borrow money. We do not believe that this objection is sound. In the first place banks subject to the statute are corporations created by the state. They owe their very existence to the consent of

the sovereign. The powers and authorities exercised by them are determined by the sovereign. It is logical to assume, therefore, that the state may control and direct the manner in which shall be exercised the powers given by it to corporations of its own creation.

*Lancaster, Simpson & Purdy,* for respondent.

The provision of the statute is not designed to force the bank to loan its funds in support of local business or to any class of individuals, for the provisions in subdivisions 1, 2, and 3 under which the bank may loan all its funds on certain classes of securities, would clearly negative any such legislative intention. The limitation is clearly intended to prevent embarrassment of the bank through loaning a considerable portion of its funds on the credit of one person. The state Constitution provides for the investment of school funds in United States bonds. Art. 8, § 2. Section 6393, G. S. 1913, provides that savings banks, whose funds have been safeguarded to a much greater extent than the funds of commercial banks, may invest in bonds or other interest bearing obligations of the United States.

Unless the context clearly indicates a different meaning, the term corporation used in connection with the word "person" means a private corporation. McDougal v. Board of Suprs. 4 Minn. 130 (184); Lancey v. King County, 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817; Donohue v. City of Newburyport, 211 Mass. 561, 98 N. E. 1083.

It would be difficult to conceive of a more direct interference on the part of a state with the exercise by the United States of a Federal power than to grant the relief asked by plaintiff. By article 1, section 8, of the Constitution Congress shall have power to borrow money on the credit of the United States. If the prohibition against loaning to the Federal government can be applied to state banks, it can be applied to other corporations created by the state, and, so far as the Federal question goes, could be applied to any funds within the state belonging to individual citizens of the state. The state cannot through its creature interfere with the exercise by the Federal government of its granted power. See Weston v. City Council of Charleston, 2 Peters, 448, 7 L. ed. 481; People v. New York City, 67 U. S. 620, 633, 634, 17 L. ed. 451; Farm-

ers' & Mechanics' Sav. Bank v. Minnesota, 232 U. S. 516, 34 Sup. Ct. 354, 58 L. ed. 706.

BUNN, J.

Defendant is a banking corporation organized and existing under the laws of this state. Plaintiff, a stockholder, brings this action to compel defendant to sell an amount of bonds of the United States purchased by it sufficient to reduce the amount retained to 15 per cent of its combined capital actually paid in and surplus. The trial court granted judgment for the defendant and plaintiff appeals.

Plaintiff contends that a loan by a state bank to the United States in an amount in excess of 15 per cent of the combined capital and surplus of the bank is forbidden by G. S. 1913, § 6358, which, as far as material, reads as follows:

" 6358. **Loans, how limited.**—The total liabilities to it (the bank), as principal, surety or indorser, of any *person, corporation, or copartnership,* including the liabilities of the several members thereof, shall never exceed fifteen (15) per cent of its capital actually paid in cash and of its actual surplus fund." etc. etc.

Counsel for plaintiff, in an able argument, presented the view that the Federal government is a "corporation" within the meaning of that term as used in the above statute. Manifestly the question is not whether the United States may, as stated by Chief Justice Marshall in Chisholm v. Georgia, 2 Dallas (2 U. S.) 419, 446, 1 L. ed. 440, "without impropriety, be termed" a corporation. It is rather this: Did the legislature intend, when it limited the total liabilities to a state bank, as principal, surety or indorser, of any *person, corporation or copartnership,* to forbid the bank to purchase the bonds of the United States in an amount in excess of 15 per cent of the bank's capital and surplus? We answer this question in the negative. The purpose of the limitation of the statute is clear. It is well known that many banks have met disaster through large loans to a single individual, copartnership, or corporation, whose business officers of the bank were often closely connected with. The object of the legislature plainly was to prevent disaster to or embarrassment of the bank by loaning a large portion of its funds to any one business

concern, whether an individual, corporation or copartnership. The suggestion that the provision of the statute was also designed to prevent a monopoly of the credit facilities of rural banks, thus insuring extension of credit to as large a number as possible, is answered by other provisions of the statute. Except the reserve the bank is required to keep on hand, there is absolutely no limitation on the amount it may loan to any particular class of borrowers, or on any particular class of securities. When we consider the evil which it was the object of the legislature to remedy, and the fact that bonds of the United States are recognized by our statutes and by everybody as the very safest investments, we have no hesitation whatever in deciding that the legislature did not intend by the provisions quoted to limit the amount of the United States bonds that a state bank might purchase or hold. We do not consider the point doubtful enough to demand further discussion or to require reference to the decided cases. They are readily available, and are all in accord with the view we take.

It is unnecessary to consider any other question.

Judgment affirmed.