## E. J. FELDMAN AND ANOTHER v. R. ARNOLD.[1]

February 15, 1924.

No. 23,814.

**Guaranty of payment by stockholders of bank.**

1. To save a state bank from being closed as insolvent, the officers and stockholders induced plaintiffs to accept a majority of the capital stock, and take over the management of the bank, and furnish sufficient funds to enable it to pay its liabilities. As a part of the transaction the stockholders guaranteed payment to plaintiffs of a specified amount of the doubtful paper held by the bank, to be selected by plaintiffs. *Held* that this guaranty, although made to the plaintiffs, was intended for the benefit of the bank.

**Suit on contract made for benefit of person not named in it.**

2. A person in whose name a contract is made for the benefit of another may sue thereon.

**Complaint against guarantors bad on demurrer.**

3. As the complaint fails to state that any paper covered by the guaranty was past due, or that any of it had been determined a loss within the terms of the guaranty, it fails to state a cause of action against the guarantors.

Action in the district court for Chippewa county to recover $12,748. From an order, Qvale, J., sustaining defendant's demurrer to the complaint, plaintiffs appealed. Affirmed.

*Oluf Gjerset* and *James H. Hall*, for appellants.

*Daly & Barnard*, for respondent.

[1]Reported in 197 N. W. 219.

TAYLOR, C.

The trial court sustained a demurrer to the complaint on the ground that it failed to state a cause of action in favor of plaintiffs, and they appealed.

It appears from the complaint that the Farmers & Merchants State Bank of Montevideo, with a capital stock of $75,000 and deposits exceeding $500,000, held uncollectible paper exceeding $120,000 in amount, and was insolvent; and that the superintendent of banks had notified its officers that it would be closed and put in liquidation, unless sufficient new assets were provided to take care of its liabilities. It further appears from the complaint that the principal stockholders of the bank, including all of its officers of whom defendant was one, entered into an agreement with the plaintiffs to the effect that the stockholders should transfer to plaintiffs 51 per centum of the capital stock of the bank; that plaintiffs should take over the control and management of the bank and furnish it sufficient funds to enable it to meet its lawful obligations; that paper of the face value of $30,000 should be charged off the bills receivable and be delivered to the contributing stockholders; that plaintiffs should have the right, within 12 months, to designate other paper which they deemed unsafe to the aggregate amount of $40,000 face value; that these stockholders "should guarantee to the plaintiffs the payment of said sum by an instrument in writing."; and that Exhibit A attached to and made a part of the complaint was executed by these stockholders as and for such written guaranty.

It further appears from the complaint that 51 per centum of the capital stock of the bank was transferred to and accepted by plaintiffs; that plaintiffs took over the management of the bank and "put into said bank in cash more than one hundred thousand dollars", and paid the demands of its depositors and other creditors so that the bank has continued in business and met its lawful obligations; that paper of the face value of $30,000 was charged off the bills receivable and delivered to the signers of Exhibit A in accordance with the terms thereof; that plaintiffs duly designated other paper of the face value of $40,000 to be paid by the signers

of Exhibit A as provided therein, and gave due notice thereof; that the proportionate share for which defendant is liable, as fixed by Exhibit A, is the sum of $12,748; that defendant has refused to pay any part of the same; and that judgment is demanded against him for that amount.

Exhibit A upon which the action is based reads as follows:

"For value received, we, the undersigned, hereby guarantee payment to E. J. Feldman and J. F. Engel, their heirs, executors, administrators and assigns, Forty Thousand dollars of the bills receivable claims and accounts of the Farmers and Merchants State Bank of Montevideo, Minn., said Forty Thousand dollars to be borne by us in proportion to the amounts set opposite of each of our respective names. No signer shall be liable for more than the sum set opposite his name. It is understood and agreed that the said E. J. Feldman and J. F. Engel, their heirs, executors and administrators and assigns are first to charge off up to the amount of Thirty Thousand dollars of bills receivable, claims and accounts and be delivered to the contributing stockholders, to which said E. J. Feldman and J. F. Engel relinquish their share; the same to be taken out of the undivided profits and surplus, and said Forty Thousand dollars shall cover such papers that said E. J. Feldman and F. J. Engel, their heirs, executors, administrators and assigns will not consider safe and bankable papers.

"It is further understood and agreed that the said E. J. Feldman and J. F. Engel, their heirs, executors, administrators and assigns are to have twelve months from this date to decide on what paper they wish to have guaranteed up to the amount of not exceeding forty thousand dollars, and it is further understood that at the end of the twelve months E. J. Feldman and J. F. Engel, their heirs, executors, administrators and assigns will notify the undersigned of such paper that they wish to have guaranteed or paid and the undersigned are to have sixty days from that date to raise money for any paper that should be considered a loss and asked to be paid.

'It is further understood and agreed that any of the undersigned stockholders of the Farmers and Merchants State Bank, who now

have money on deposit in said bank in certificate of deposit, that they hereby agree to renew them for at least a period of twelve months from the time said certificates fall due."

This instrument was signed by 16 persons each of whom set the amount of stock owned by him opposite his name. They will be referred to hereafter as the contributing stockholders. The next day the following supplemental instrument was executed by the same persons:

"Amendment to a Certain Guarantee executed by certain stockholders of the Farmers & Merchants State Bank of Montevideo, Minnesota, to E. J. Feldman and J. F. Engel, dated May 12th, 1921.

"It is further agreed between the parties on the attached guarantee that the guarantee shall be in full force and effect on all renewals of the Bills Receivable of the Farmers & Merchants State Bank of Montevideo, Minnesota, that may be renewed from time to time during the term of this guarantee and that the signers of this amendment do not waive any of their liability on any of the Bills Receivable of said bank that may be renewed from time to time by the officers in charge of said bank during the time that this guarantee is in force, namely twelve months from May 12th, 1921."

The question presented is whether, upon the facts stated in the complaint, the plaintiffs are entitled to recover from the several signers of Exhibit A the respective amounts specified therein.

The bank was about to be closed as insolvent. In that event the stockholders were not only liable to lose their entire investments, but were also liable to be assessed to the full amount of their stock. To avert the threatened insolvency and the losses which would follow therefrom, the contributing stock holders induced the plaintiffs to undertake the burden of placing the bank on its feet. The purpose of all parties was to put the bank in position to meet its obligations and continue in business. To accomplish this purpose, the contributing stockholders, on their part, transferred a majority of the stock and the control and management of the bank to the plaintiffs, and assumed the obligations in controversy; the plaintiffs, on their part, took over this stock and the management

of the bank and agreed to provide sufficient funds to enable it to pay its creditors. By the agreement entered into, plaintiffs acquired rights and assumed liabilities which made the amount which the bank would be able to realize from its paper vitally important to them, and as a part of the transaction they required the subscribing stockholders to execute Exhibit A to secure the payment of $40,000, face value of such paper. This instrument is so loosely and ineptly drawn that we find it difficult to determine the proper legal effect to be given to it. However, it constituted an important part of an important business transaction, and must be given a construction which will carry into effect, so far as may be, the purpose which the parties intended to accomplish, as disclosed by its provisions taken as a whole and considered in the light of the attending circumstances.

We think that the purpose of this instrument was to make the contributing stockholders responsible for the payment to the bank of $40,000, face value, of its doubtful paper, to be picked out and designated by plaintiffs; and that the guaranty, although made to plaintiffs, was intended for the benefit of the bank. In other words, that this is a case where a contract was made in the name of one party for the benefit of another. We will outline briefly our reasons for this conclusion:

Plaintiffs were taking over the control and management of the bank and it seems to have been assumed that this gave them the right to make contracts in their own name binding on the bank and on the contributing stockholders. They agreed in the instrument in question to charge off doubtful paper held by the bank, of the face value of $30,000, and turn it over to the contributing stockholders. They did so, and neither party questions the propriety or validity of their action. They could not transfer this paper if acting as individuals but only if acting for the bank.

The subscribing stockholders agreed in this instrument that all deposits for which they held time certificates should be left in the bank for at least one year after the certificates then held became due, and that the doubtful paper, now in question, might be renewed from time to time by the officers in charge of the bank and

that the guaranty should apply to all such renewals,—provisions obviously for the benefit of the bank. They assumed liability upon the guaranty in proportion to the amount of stock which they respectively held; that is, in the same proportion in which they would have been liable if an assessment had been made on the stock. They, in terms, guaranteed payment of this paper to the plaintiffs; but the paper was payable to the bank, not to plaintiffs. The plaintiffs did not own or hold it and had assumed no personal responsibility for its payment. Except as it might affect the amount of money which they would be required to furnish to keep the bank a going concern, their interest in it was the interest common to all the stockholders. All payments made upon it by the makers would be made to the bank. Clearly no one intended that the guarantors should pay to the plaintiffs for their own personal benefit that part of it which the makers failed to pay. The purpose was to save the bank from insolvency. To aid in doing so the parties plainly intended that the loss to the bank upon this paper should be made good by the guarantors in proportion to their liability as stockholders. It is also to be noted that, unless payments made by the guarantors inured to the benefit of the bank, the guarantors could not be subrogated to the rights of the bank in the paper and would have no recourse against the makers of it. In short the acts and stipulations of the parties when viewed in the light of the conditions which existed and the obvious purpose sought to be accomplished show that the guaranty, although made in the name of the plaintiffs, was intended for the benefit of the bank.

Plaintiffs could bring suit on the guaranty in their own names, for the statute provides that any person in whose name a contract is made for the benefit of another may bring suit thereon. G. S. 1913, § 7676. Dunnell, Minn. Dig. § 1895, and cases there cited.

Although the action was brought on a valid guaranty by proper parties, we have the further question whether the complaint states sufficient facts to show that a cause of action has accrued against the guarantors. It is a well established general rule that one who guaranties the payment of commercial paper becomes liable on his guaranty when the maker defaults in payment and not until then.

Dunnell, Minn. Dig. § 4076, and cases cited. The complaint states that plaintiffs selected and designated the paper to be covered by the guaranty within the time allowed therefor, and duly notified defendant and the other guarantors thereof more than 60 days before the commencement of the action, and that defendant had failed and refused to pay his proportionate share of such paper. The complaint seems to have been framed on the theory that all that plaintiffs were required to show to establish a cause of action was the making of the contract and that they had designated and given notice of the paper to be covered by the guaranty more than 60 days before bringing the action; for it states nothing concerning any of this paper, neither when it was executed, nor when it was payable, nor that it was past due. The contract provided that the paper might be renewed from time to time, and for aught that appears it may all have been renewed and extended beyond the time when suit was begun. In short, the complaint fails to show that a right of action had accrued on the paper or that the makers of it were in default. The guaranty provides that plaintiffs "will notify the undersigned of such paper that they wish to have *guaranteed or paid* and the undersigned are to have sixty days from that date to raise money *for any paper that should be considered a loss and asked to be paid.*"

This does not require payment within 60 days of all the paper designated, but only of that "considered a loss and asked to be paid." The complaint fails to point out any paper considered a loss within the meaning of the provision, or any paper that had become due so that payment could be demanded.

As the facts stated do not show that a cause of action had accrued against the guarantors, the demurrer was well taken and the order sustaining it is affirmed.