HARRIET STATE BANK AND ANOTHER v. GEORGE E. SAMELS AND ANOTHER.[1]

July 17, 1925.

No. 24,708.

**Doctrine of cited case inapplicable.**

1. The doctrine of Jefferson v. Asch, 53 Minn. 446, 55 N. W. 604, 25 L. R. A. 257, 39 Am. St. 618, to the effect that a stranger to a contract cannot recover thereon although the contract contains a provision for his benefit, is not applicable to the contract set out in the opinion.

**When superintendent of banks and bank may sue on bond given for bank's benefit.**

2. Where a bond, given for the benefit of a bank, runs to the superintendent of banks, the bank and the superintendent may properly join in an action on the bond.

**Sufficient consideration to hold principal and surety.**

3. The principal in the bond was an officer and large stockholder of the bank. By giving the bond, the bank obtained the permission of the superintendent to continue in business. The surety was paid a premium for writing the bond. Neither obligor can defend on the ground that there was no consideration for the bond.

**Statute inapplicable to bond taken for bank's benefit.**

4. Section 7677, G. S. 1923, prohibiting a bank from making a loan to one person of more than 15 per cent of its capital and surplus, has no application to a bond taken to secure payment of the bank's notes.

**Resolution of board of directors, approving bond, unnecessary.**

5. Taking such a bond is in the nature of routine business. A resolution of the board of directors, pursuant to section 7678, G. S. 1923, authorizing its acceptance, is unnecessary.

[1] Reported in 204 N. W. 938.

**Bank had beneficial interest in bond.**

    6. The bank had a beneficial interest in the bond. One of the purposes for which it was executed was to enable the bank to continue in business.

**Bank not required to pursue makers of notes before suing on bond.**

    7. The bond was not given merely to secure the collection of the notes described therein, hence the bank was under no duty to pursue the makers thereof before coming on the bond.

**Superintendent of banks did not exceed authority given him by statutes.**

    8. In taking the bond, the superintendent of banks did not exceed the authority conferred upon him by sections 5324, 7688, G. S. 1923. Neither did he offend public policy by permitting the bank to continue in business instead of closing its doors and liquidating its assets, nor did he violate section 10407, G. S. 1923, by conniving at the acceptance of deposits by the bank after it had become unsafe.

**Final provision in bond prevented discharge of obligors from liability.**

    9. The failure of the immediate parties to the contract to carry out the terms thereof did not discharge the obligors in the bond from liability thereon. The final provision of the bond avoids that result.

**What is admitted by demurrer to pleading.**

    10. A demurrer to a pleading admits all material facts well pleaded, all inferences of fact which may fairly be made therefrom, and all necessary legal inferences which arise from the facts pleaded.

    1. See Contracts, 13 C. J. p. 709, § 816 (Anno).
    2. See Principal and Surety, 32 Cyc. p. 125 (Anno).
    3. See Principal and Surety, 32 Cyc. p. 54.
    4. See Banks and Banking, 7 C. J. p. 712, § 448.
    5. See Banks and Banking, 7 C. J. p. 716, § 452 (Anno).
    6. See Principal and Surety, 32 Cyc. p. 123.
    7. See Principal and Surety, 32 Cyc. p. 97 (Anno).
    8. See Banks and Banking, 7 C. J. p. 482, § 12.
    9. See Principal and Surety, 32 Cyc. p. 160.
    10. See Pleading, 31 Cyc. pp. 333, 336.

    Headnote 2. See notes in 25 L. R. A. 257; 2 L. R. A. (N. S.) 783; 6 R. C. L. 892; 2 R. C. L. Supp. 237.

Headnote 8. See notes in 64 L. R. A. 581; 17 L. R. A. (N. S.) 1113; 20 R. C. L. 666; 3 R. C. L. Supp. 1096; 4 R. C. L. Supp. 1373; 5 R. C. L. Supp. 1121.

Action in the district court for Hennepin county upon a bond. Defendants took separate appeals from orders, Leary, J., overruling their separate demurrers to the last amended complaint. Affirmed.

*William E. G. Watson, Ben W. Palmer, Jesse Van Valkenburg* and *Bjorklund & Andre,* for appellants.

*Clifford L. Hilton,* Attorney General, *Rollin L. Smith,* Assistant Attorney General, and *Fowler, Carlson, Furber & Johnson,* for respondents.

LEES, C.

Action on a bond executed by the defendant Samels, as principal, and the Hartford Accident & Indemnity Company, as surety, to A. J. Veigel, as State Superintendent of Banks. Mr. Veigel and the Harriet State Bank joined in bringing the action. Separate demurrers to the complaint were interposed and overruled. The court made the statutory certificate of doubt, and defendants appealed separately.

The capital of the bank was $25,000. It had become impaired and its liabilities exceeded its assets. It was notified by Mr. Veigel to levy a stockholders' assessment or replace bad paper with good.

Samels was a director, an executive officer, and one of the principal stockholders. On May 29, 1923, he entered into a contract with John R. Schuknecht, which is made part of the complaint. The contract recites that Schuknecht desired to purchase all the outstanding capital stock of the bank, and that Samels was to get control of it and transfer it to Schuknecht, who was to take over the management of the bank on June 15, 1923. On November 1, 1923, Schuknecht was to pay Samels the book value of the stock plus $10,000. Evidently it was thought that the book value would not be less than $25,000. Schuknecht was to deposit the purchase price of the stock with the bank. The bank was to hold the deposit for one year (unless it was sooner released by agreement of the parties), "as a reserve and in the nature of a guarantee to indemnify"

Schuknecht from any loss sustained on account of paper of doubtful value and to replace at face value any of the bank's securities which might be rejected because they were not "bankable paper."

Then follows a recital that a list of the doubtful paper has been furnished to the superintendent of banks; that Samels has given a bond of $50,000 to him to secure the performance of the contract and has agreed to put the assets of the bank in a condition satisfactory to him and to the Minneapolis Clearing House Association; and that, if necessary, resort to the deposit and to the bond may be had to maintain the bank in that condition.

The bond was executed June 2, 1923; refers to the contract; lists notes aggregating $49,942.96 as of doubtful value; states that it shall be for the benefit of any person entitled to the protection thereof; that its purpose is to insure the payment of the notes; that there shall be no liability thereon until the deposit of the purchase price of the stock has been exhausted; and that the bond, reduced by the deposit to $15,000, is to remain and be in force as security for the notes which are still unpaid. The bond concludes with this provision:

"It is further understood and agreed that in case John R. Schuknecht does not complete his contract of purchase according to his agreement with George E. Samels and does not pay in the $35,000.00 as purchase price for said Harriet State Bank, then in that event this bond is automatically reduced in the amount of $35,000.00."

The complaint alleges that the contract was made by authority of the bank and its stockholders and was accepted; that the consideration for the bond was the premium paid and the permission given to the bank to continue in business; that the contract was not performed; that on November 20, 1923, the superintendent of banks took charge and continued in charge of the bank until a reorganization was effected on April 1, 1924; that, while he was in charge and for a valuable consideration, the obligors reaffirmed the bond and agreed to carry out the terms and conditions thereof; that the bank continued to be the owner of the notes listed and that

there is due and unpaid upon them a sum greatly in excess of $15,000.

1. In Jefferson v. Asch, 53 Minn. 446, 55 N. W. 604, 25 L. R. A. 257, 39 Am. St. 618, it was held that a stranger to a contract to whom the promisee is under no duty or obligation, who is not in privity with the parties and who has paid no consideration, cannot recover upon a promise to do something for his benefit.

That doctrine is firmly established in this jurisdiction, Clark v. P. M. Hennessey Const. Co. 122 Minn. 476, 142 N. W. 873; General Elec. Co. v. Jordan, 137 Minn. 107, 162 N. W. 1061; Clark v. Clark, supra, page 201; but we think it has no application here.

The notes continued to be the property of the bank after the contract was made. It was to hold the deposit of the price of the stock to cover them. The value of its assets would be reduced if they were not collected. For that reason Schuknecht was interested in their collection. Both the superintendent of banks and Samels were seeking to maintain the solvency of the bank. Samels as an officer owed duties to the bank which he was endeavoring to discharge. To carry out the terms of the contract, the bank had to act, as well as Samels and Schuknecht; its co-operation was necessary. The facts alleged do not bring the case within the scope of the rule adopted in Jefferson v. Asch. They are more nearly like those in Feldman v. Arnold, 158 Minn. 243, 197 N. W. 219. See also Michaud v. Erickson, 108 Minn. 356, 122 N. W. 324. The bank can maintain an action on the bond.

2. Although the bond ran to Mr. Veigel, the bank was a party really interested, hence it had a right to sue. G. S. 1923, § 9165; 20 R. C. L. 665.

The superintendent could also sue because the bond ran to him for the benefit of the bank. G. S. 1923, § 9167; Pomeroy, Code Rem. pp. 113, 238; 30 Cyc. 86.

3. The execution of the bond induced the superintendent to allow the bank to continue in business. This was an advantage to Samels, who was confronted by liability as a stockholder if the bank was closed. Samels cannot be heard to say that the bond was without

consideration. The surety received a premium for writing the bond, hence it is in no position to urge want of consideration. Whether the consideration was received from the bank or from Samels is of no consequence, for it is not necessary that the plaintiff unite in his person both consideration and promise. Van Eman v. Stanchfield, 10 Minn. 197 (255).

4. Citing section 7677, G. S. 1923, appellants contend that the bank was not authorized to accept the undertaking of the surety because the amount exceeded 15 per cent of the bank's capital and surplus. That section relates to loans and not to security for loans. A bank is not prohibited from taking any amount or kind of security to protect it against possible loss from loans already made. The purpose of the statute is to prevent disaster to a bank by loans of a large portion of its funds to any one business concern. Trumer v. South Side State Bank, 139 Minn. 222, 166 N. W. 127.

5. It is contended that the bank could not lawfully become a party to the contract in the absence of a resolution adopted by the board of directors as prescribed by section 7678, G. S. 1923. That section has no application to the routine business of banks. Taking security for loans already made is routine business. Sutley v. Polk County State Bank, 162 Minn. 118, 202 N. W. 338. The bank incurred no liability. It had everything to gain and nothing to lose. A resolution authorizing the acceptance of the benefits of the transaction was unnecessary.

6. The contention that the contract and bond show conclusively that they were not made for the benefit of the bank is without merit. Evidence of a purpose to avert theatened insolvency appears in both instruments. What has been said in the first section of this opinion is applicable. Feldman v. Arnold, supra, is opposed to the contention.

7. It is contended that the bond was given merely to secure the collection of the notes, hence there can be no recovery upon it until the remedy against the makers has been exhausted. By the terms of the contract, if any of the notes did not measure up to the standard of bankable paper, part or all of the cash deposit could be with-

drawn. When the deposit was exhausted resort might be had to the bond. The deposit was to be used in "liquidating" the notes. The bond recites that its purpose is "to secure and insure the *payment* of the above listed promissory notes." No words in the contract or bond fairly import that the bank is under a duty to pursue the makers of the notes before coming on the bond, or that the obligors are mere insurers of the solvency of the makers. We hold that the bond is not a collection bond, but one intended to secure the payment of the notes at maturity.

8. It is urged that, since the superintendent of banks is a statutory officer, he has no authority save that expressly conferred upon him by law; that he is powerless to agree to refrain from the performance of an official duty; that he should have closed the doors of the bank when its capital became impaired; and that it was contrary to public policy to permit the bank, threatened with insolvency as it was, to continue to receive deposits.

Section 5324, G. S. 1923, provides that all state banks shall be under the supervision and subject to the control of the superintendent. Section 7688, G. S. 1923, authorizes him to take possession of the property and business of a bank and liquidate the bank whenever it appears to him that its capital is impaired or that it is conducting its business in a unsafe manner.

The legislature has not prescribed the manner in which the superintendent shall exercise control. It is his duty to exercise his powers so as to safeguard the rights of those who deal with banks in reliance upon their stability and solvency. The legislature has conferred upon him the general power of control, leaving it to him to determine in what manner the power may best be exercised. If he can save a bank from liquidation and protect the depositors from loss by compelling a change of management or the replacement of assets of doubtful value with those which are sound, or if he can obtain security for the payment of obligations due to the bank and so transform bad paper into good, no one should be heard to complain. It is sound public policy to permit him to adopt any lawful method by which the failure of a bank may be averted. Although

the statute does not expressly authorize him to take security for the payment of notes due to a bank of impaired capital, authority may be inferred from the language of the statute.

But, granting for the purpose of the argument, that statutory authority was exceeded, it does not follow that the obligors are released. Acts of a public officer in excess of authority are not necessarily contrary to public policy. When public policy is not offended a contract with him may work an estoppel and prevent the parties thereto from questioning his authority. City of Marshall v. Kalman, 153 Minn. 320, 329, 190 N. W. 597. This is a proper case for the application of that doctrine. Having procured permission to continue the operations of the bank, Samels is estopped to deny Veigel's authority to take the bond, and so is the surety, which received the premium.

It is asserted that the superintendent connived at the acceptance of deposits by the bank when it was insolvent and in an unsafe condition, hence he violated section 10407, G. S. 1923, and therefore public policy requires a holding that the bond is void. To this we cannot agree. The purpose of the bond was to prevent the bank from becoming insolvent and to protect depositors against loss. It would be an unwarranted construction of the statute to hold that it makes acts criminal which were clearly done for the laudable purpose of maintaining the solvency of the bank.

9. Much is made of the fact that the complaint alleges that the contract "was in no respect performed by any of the parties thereto or otherwise." There would be force in the point were it not for the concluding paragraph of the bond to which we have already adverted. [page 268.] It appears therefrom that the parties had in contemplation the possible nonperformance of the contract. In that contingency the liability of the obligors is reduced to $15,000. It seems clear that the effect of nonperformance was not to extinguish the liability of the obligors completely but only partially. The contingency contemplated has arisen. Schuknecht did not purchase the stock or make the deposit of $35,000. Notes listed as doubtful remain unpaid in an amount exceeding $15,000. The

obligors undertook to pay if Schuknecht did not perform. They cannot escape because he did not perform.

10. Other points are raised and argued in the briefs. Our examination of those not mentioned has satisfied us that they are not of sufficient importance to merit discussion. In passing on the questions discussed, we heed the familiar rule that a demurrer admits all material facts well pleaded, all the inferences of fact which may fairly be made therefrom, and all the necessary legal inferences which arise from the facts pleaded. Dun. Dig. § 7542. We hold that the demurrers were properly overruled.

Orders affirmed.