# ELIZABETH CRUICKSHANK v. CHESTER C. ELLIS AND OTHERS.[1]

June 28, 1929.

No. 27,389.

[1]Reported in 226 N. W. 192.

104

*Charles L. DeReu* and *E. B. Korns,* for appellant.

*E. V. Molle,* for respondents.

HOLT, J.

Plaintiff appeals from the order denying a new trial, findings having been made in favor of respondents.

The respondents Richard B. Daniel and Arthur P. Rose, real estate agents and loan brokers at Marshall, Minnesota, negotiated a loan of $3,000 from plaintiff to defendant Ellis, secured by a second mortgage executed by Ellis and wife on a half section farm near Marshall, subject to $40,000 purchase mortgage, which Ellis had assumed and agreed to pay. The transaction was consummated March 1, 1920, the negotiations for the purchase of the farm and for this loan having been previously had. Plaintiff at the time lived in California but had been a resident of Marshall and was well acquainted with respondents, had confidence in their judgment, and had through them made prior loans on lands in that territory. In her complaint she charges respondents with fraud and misrepresentation inducing the loan. She also alleged that they guaranteed it and that it was really made for their benefit. The pivotal findings attacked on this appeal are these:

"4. That the said $3,000 loan from the plaintiff to the defendants Ellis was effected through the said Daniel & Rose, and all the negotiations and communications had with respect to the procurement of said loan were made in writing between the plaintiff and the defendants Daniel & Rose.

"That in negotiating said loan Daniel & Rose acted at the special request of the plaintiff in her behalf; that they rendered services to the plaintiff in said matter in good faith and without compensa-

tion; that they were not guilty of misrepresentation or fraud upon the plaintiff in performing said services, and that they did not at any time guarantee to plaintiff the payment of said loan. That after the completion of said loan and after default in the payment of interest thereon, Daniel & Rose wrote to the plaintiff and stated in substance that inasmuch as they had recommended this loan they felt morally obligated thereon and that they expected to protect the plaintiff against any loss on the same. That said promise or statements so made were made out of friendship, sympathy and other moral motives, and not for any valuable or legal consideration.

"5. That the plaintiff did not, by reason of the promises so made to her, in any way act thereon to her detriment, and was not in any manner prejudiced by reason of said promises, and sustained no loss by reason thereof."

The record is convincing that there was no fraud or misrepresentation made by Daniel & Rose to induce plaintiff to make the loan. So far as their judgment went it was directed to securing a safe investment for plaintiff. They knew that she had confidence in them, and they doubtless endeavored to merit the same. A finding that they induced plaintiff by fraud or misrepresentation to make the loan could not be sustained.

Plaintiff attempted to prove a guaranty by a lost letter. In this she failed, as indicated by the memorandum of the trial court. He concluded that the letter, which witnesses designated as such and the contents of which they testified to, was exhibit 7, written almost two years after the loan was made and containing these statements:

"As we recommended this mortgage to you, we feel morally responsible to you, and in the event that the first mortgage is foreclosed and we are not able to protect your interests in any other way, we expect to assign to you a $3,000 second mortgage which we hold * * *. We are sorry to have to write you that there is a possibility of this Ellis mortgage becoming worthless, but such are the facts. However, you and your mother need not worry over this, for we expect to protect you."

This letter was directed to plaintiff's daughter, who was then living and attended to her mother's correspondence. It appears that in January, 1920, respondents notified plaintiff that a mortgage of $2,500 which they had placed for her would be paid on March 1 next, and they sent a list of mortgages they had or expected to have for sale so that she might select one of them for reinvestment should she so desire. Plaintiff answered that she would like a mortgage for $3,500, but if that could not be had she would "prefer the $3,000 mortgage on the Wagner farm to any contained in your list." In her letter she made the suggestion that the Wagner farm was not a full half section, as she thought the cemetery near Marshall was one of the 40s in the description of the half section. In the letter, written by the daughter, this language also is found:

"We are too far away to make personal investigation of any property and have to depend on some one else's honesty and good judgment as to value, etc. But in dealing with you this time I feel confident that nothing will be offered but what is good and safe."

In reply respondents wrote that if they could not find a safe mortgage for $3,500 before March 1 "we will hold the $3,000 second mortgage on the Wagner farm. This farm is just south of town instead of east and contains the full 320 acres. We think this is a perfectly safe mortgage and it certainly pays a good rate of interest. As we wrote before, the party will have $13,000 cash invested in the farm and he owns a fine residence property in town and also a half section farm near Wilmont."

After the mortgage was made and recorded it was sent plaintiff by letter in which this was said by respondents:

"We believe that you will find this a good and safe mortgage and that Mr. Ellis will attend to the payments promptly. We will attend to the collection of this for you if desired, without charge."

We think the learned trial court was justified in concluding that there was no lost letter containing a guaranty. It is plain that no guaranty can be found in the extracts above quoted from the

correspondence prior to the time the mortgage was executed, recorded, and delivered to plaintiff. Her letters to them do not call for a guaranty. She wanted their best judgment and opinion as to the safety of the investment. And we are satisfied that the finding that no guaranty was given cannot be disturbed upon this record.

The correspondence after the collapse of land values does show that respondents promised to take care of plaintiff as stated in the finding above quoted. But there was no legal consideration for that promise. A moral obligation which at no time has amounted to a legal duty is not an adequate consideration. 13 C. J. p. 358, § 219; 6 R. C. L. p. 667, § 76; 2 Dunnell, Minn. Dig. (2 ed.) § 1757; Rask v. Norman, 141 Minn. 198, 169 N. W. 704, annotated in 17 A. L. R. 1296, 1299.

But plaintiff contends that the loan, though ostensibly made to Ellis, was for the benefit of respondents and hence there was a consideration for the promise. In this connection it is claimed also that this benefit was not disclosed to her by respondents, her agents. The proposition is based on the fact that Daniel & Rose were to have a commission of $4,800 in the sale of the Wagner farm. For some purpose, not fully disclosed, the parties interested handled the sale in this manner:

The farm was bought for Ellis under a contract between Daniel & Wagner, Ellis furnishing the earnest money of $3,000; $13,000 more was to be paid when the deed was delivered on March 1, 1920; Daniel was then to execute a mortgage to Wagner for the balance of the purchase price, $40,000. Pursuant to this arrangement Wagner made a deed to Daniel, the latter and his wife gave back the purchase mortgage for $40,000, and then conveyed to Ellis subject to the mortgage, which Ellis assumed and agreed to pay. When this was done, Ellis gave the mortgage to plaintiff and with the proceeds and additional funds paid the balance of the purchase price of $13,000. In the accounting between the parties respondents received their agreed commission, as to which there was no dispute from the time the contract of sale was first made. From the testimony it is clear that respondents had fully earned their agreed commission when the binding contract for the sale of the Wagner

farm to Ellis was made. It was after that that Ellis requested them to find one who would loan the $3,000 he needed on a second mortgage. The facts do not call for a finding that the loan was for the benefit of respondents.

Plaintiff claims estoppel. The burden was upon her to prove the facts that would estop respondents from repudiating the promise to protect plaintiff made after the slump in values imperiled her security. There is no showing of any step plaintiff could or would have taken to protect herself had the promise not been made, or that she refrained from doing something of avail to her by reason thereof. On that issue the court could make no other finding than the one above set forth.

It appears that when Ellis defaulted in the payment of interest on the first mortgage Wagner foreclosed and subsequently brought an action against Daniel and Ellis for a deficiency. In that action Daniel interposed an unverified answer wherein occurred this statement with respect to plaintiff's loan: "but to enable said Ellis to place said mortgage loan defendant was obliged to and did guarantee the repayment of said loan." The action was settled by stipulation whereby Ellis surrendered possession of the farm to Wagner and in consideration thereof Daniel "agreed to indemnify * * * Ellis against liability on account of" this second mortgage, and Daniel dismissed on the merits his counterclaim based on the allegation that at Wagner's request and for his benefit he had executed the contract in relation to the sale of the farm to Ellis and had signed the $40,000 note and mortgage. The respondent Rose was not a party to the action. The complaint, answer, and stipulation were properly received as against Daniel. But the probative force of the admissions therein contained was for the court. At the time of the trial Daniel's mentality was in a deplorable condition. Whether it was better or how much when the answer was interposed does not appear. Comparing the answer interposed by Ellis in the present action with his testimony on the stand in this trial indicates how little reliance is to be placed upon statements in a party's unverified pleading. We think the court was fully justified

in not accepting the quoted statement as conclusive of a guaranty made to induce plaintiff to make the loan.

Another contention is that in the stipulation is an agreement to pay this loan upon which plaintiff is entitled to sue. But clearly it is merely an indemnity exacted by Ellis for his sole benefit. None of the parties contemplated giving plaintiff thereby a cause of action. Feldman v. Arnold, 158 Minn. 243, 197 N. W. 219, is not in point. Certainly Jefferson v. Asch, 53 Minn. 446, 55 N. W. 604, 25 L. R. A. 257, 39 A. S. R. 618, cited by plaintiff, does not warrant the claim that she can recover here upon the stipulation. Nor do we think the modification of that decision by subsequent cases cited in Peterson v. Parviainen, 174 Minn. 297, 219 N. W. 180, gives her such right. At most plaintiff was an "incidental beneficiary" not entitled to sue. American L. Inst. Contracts, c. 6, § 133.

We think the findings first above quoted are sustained by the record and are decisive in respondents' favor. The issues in respect to setting aside conveyances made by respondents on the alleged ground that they were in fraud of creditors, especially plaintiff, become of no consequence in this action when it is determined that she can recover nothing against respondents. The court correctly ordered judgment in her favor against Ellis.

The order is affirmed.