## STATE v. H. H. FLOWERS.[1]

December 16, 1932.

No. 29,199.

[1]Reported in 245 N. W. 834.

*John E. Regan* and *A. J. Berndt,* for appellant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, *Roy C. Frank,* County Attorney, and *George T. Olson,* Special Assistant County Attorney, for the state.

STONE, J.

Convicted of the alleged crime hereinafter considered, and sentenced to imprisonment, defendant appeals from the order denying him a new trial.

We have a statute, G. S. 1923, § 7677, as amended, 2 Mason, 1927, id., providing as to any state bank that the total liabilities of any borrower "shall never exceed fifteen (15) per cent of its capital actually paid in cash and of its actual surplus fund. * * * The total liability of any officer or director shall never exceed ten per cent of the same aggregate amount." Any officer or employe wilfully permitting or approving "such loan" in violation of the statute "shall be guilty of a gross misdemeanor," and "personally liable to the bank for the amount of such loan in excess of the statutory limit."

The manner of defendant's alleged offending against this statute, according to indictment and evidence, is as follows. May 31, 1930, being then a director and president of the First State Bank of Cleveland at Cleveland in Le Sueur county, defendant (the vendor) assigned to the bank an executory contract for the sale and conveyance of farm lands situated in Meeker county. The vendee, one Keller, had agreed to pay $30,000 as the purchase price. The contract recites that $1,000 had been paid in cash and that $15,000 more was to be paid in stated instalments in the years 1930-1933 inclusive. The balance was covered by the vendee's assumption of a $14,000 mortgage to the state. Interest on deferred payments was at the rate of seven per cent per annum. The liability in supposed violation of the statute, relied upon by the state for conviction, was the obligation assumed by defendant in unconditionally

guaranteeing "collection and payment" of the Keller contract. The liability so assumed is admittedly in excess of the statutory maximum.

But that is not all of the picture. In stating the facts we assume the truth of certain evidence offered by defendant but which was rejected. The bank was in difficulty. It had just undergone examination by the state banking department. The examiner was there insisting that certain questionable bills receivable be gotten rid of and other and satisfactory value substituted. To meet that demand and with the approval of the directors, defendant turned over and guaranteed the Keller contract. There seems to be in evidence a deed of the land from defendant to the bank. It is unexplained by testimony or other evidence. It adds nothing to the case, either for or against defendant. His guaranty of the contract is the important thing, for the offense charged is that he "did negotiate this said contract for deed for the sum of $10,500," that being the figure at which the Keller contract was put on the bank books as a bill receivable.

There is nothing for the state to contradict the conclusion to be drawn from the offered evidence that the transaction was ·precisely what defendant claimed it was—an effort on his part, not to borrow money or otherwise better himself, but rather and only to meet the demand of the bank examiner that new value be substituted for the questionable and apparently worthless items which were gotten rid of. As far as the evidence goes, defendant suffered detriment not only to the extent of surrendering all rights as creditor and vendor under the Keller contract, but also by guaranteeing it. The bank parted with no funds and no other property save the bad paper for which the Keller contract was substituted. If the statute is to be construed, not only to prohibit that sort of transaction but also to penalize it, the legislature has subjected bankers to the brand and punishment of crime for morally commendable acts. To illustrate: If an officer or director of a state bank, finding it in difficulty, should donate securities of ample and unquestioned value and at the same time back them by his personal

guaranty, he would automatically make himself a criminal if, perchance, the amount of his guaranty exceeded the statutory limit.

The legislature intended no such glaring absurdity. The manifest purpose was to protect bank assets, not to obstruct and even penalize commendable efforts to protect them. It certainly was not the intention to bar anyone from going as far as he likes in surrendering his own property to protect against loss, nor to deprive bank and creditors of the additional security, if any, of his personal guaranty.

That construction of the statute, making it result in sense rather than nonsense, justice rather than injustice, is inescapable. In Harriet State Bank v. Samels, 164 Minn. 265, 270, 204 N. W. 938, 940, we had a similar problem and held that the statute "relates to loans and not to security for loans." The conclusion was that a bank is not prohibited "from taking any amount or kind of security to protect it against possible loss from loans already made." With similar logic it has been held that a renewal note, including principal and accrued interest, does not transgress the law because the new principal exceeds the statutory maximum. Farmers State Bank v. Youngers, 56 S. D. 7, 227 N. W. 371; Payne v. Ostrus (C. C. A.) 50 F. (2d) 1039, annotated, 77 A. L. R. 531. In the latter case [50 F. (2d) 1041] it was said that the court must look beyond the mere act of renewal "to find out what was the real and true transaction." In this case it was prejudicial error to exclude the evidence offered by defendant to show that the real nature of the transaction was such that the statute was not violated. Altogether too literal an interpretation of the language of the statute, without due reference to its plain purpose, seems responsible for the error.

There is an item of $723.15 which was placed to the credit of defendant as a result of the transaction in question. The prosecution does not contend that thereby the statute was violated. The indictment does not so charge. That aside, there is claim for the defense that every cent of the money he got at the time, if defendant got anything, was used on the farm to protect, pro tanto, the new value which defendant was furnishing. We are not concerned now

with other liabilities of defendant to the bank. He was not on trial for general mismanagement, but only for the offense charged in the indictment. There was no crime, unless much more is made to appear than this record discloses.

Reversed.

OLSEN, J. took no part in the consideration of this case.