KNUTE L. WIGDALE v. OTTO ANDERSON.[1]

February 1, 1935.

No. 30,081.

[1]Reported in 258 N. W. 726.

*Ueland & Ueland,* for appellant.
*W. S. Foster* and *R. C. Andrews,* for respondent.

HILTON, JUSTICE.

Plaintiff brought this action to recover $700 loaned by him to defendant on or about January 8, 1931, which defendant agreed to repay within a reasonable time at six per cent interest. The complaint further alleged that the reasonable time had expired; that demand had been made on defendant; and that no part thereof had been paid. Judgment was demanded accordingly. Defendant admitted the loan and that, though demanded, nothing had been paid thereon, and as and for a defense and counterclaim set forth certain transactions, promises, and agreements (hereinafter referred to) between the parties, as a result of which plaintiff was indebted to him in the sum of $7.93 (the difference between the asserted claims of the parties). The case was tried to the court without a jury. Pursuant to findings of fact and as a conclusion of law, the court held that defendant was entitled to recover $7.93, and judgment was ordered accordingly. Plaintiff's motion for amended findings or for a new trial was denied, and this appeal taken.

Defendant, a farmer living near Milaca, Minnesota, on or about July 16, 1927, sent a check for $700 by mail to plaintiff, his brother-in-law, who lived in Minneapolis. With this money plaintiff bought a $500 bond and two $100 bonds issued pursuant to a trust deed, dated April 30, 1927, executed by Mikro Kodesh Ansha Svard, a religious corporation. It will be hereinafter referred to as the congregation. By this trust deed it conveyed to the Midland Bank & Trust Company of Minneapolis, as trustee, its real estate, the place of worship thereon, and certain personal property. All the property so conveyed was useful only for religious purposes. To secure

the indebtedness described in the deed, bonds of the face value of $55,000 were issued by the congregation. These were coupon bonds and bore interest at six per cent per annum, payable semi-annually, May 1 and November 1, each year. The congregation defaulted in certain payments due November 1, 1930. The trustee declared the whole debt due and payable, in accordance with the terms of the trust deed. Proper court proceedings were instituted; judgment entered November 26, 1932; sale had January 21, 1933, and the property bid in for the full sum secured, with interest, costs, and expenses. No deficiency existed; the judgment was satisfied; no redemption was made.

It was the claim of defendant that the money was sent by him to plaintiff with directions to deposit the same to defendant's credit in an account to be opened by plaintiff on his behalf in the Farmers & Mechanics Savings Bank of Minneapolis. Plaintiff denied that such instructions were given and testified that the instructions were "to invest the money." Plaintiff denied ever having received any other instructions or that he had written a letter to defendant in relation thereto. Later in the trial, however, a letter (exhibit D) was introduced in evidence written by plaintiff to defendant a few days after receipt by plaintiff of the money in question, which was in the following language:

"Just received your letter. I went down to the Farmers and Mechanics Savings Bank before I could deposit this money you would have to fill out their card with your signature and it would not draw interest till the first of August.

"You will think I am getting pritty officious when you see what I have done. I went over and bought bonds in the Jewis[h] Synagogue, one bond for $500, 2 $ hundred each. Interest start from May 1st, 1927. I bought one for George this Spring. I know of no better Security. I will guaranty this bonds any time you dont want them Ill take them over. I had them registered in your name but you can transfer them any time. By sending them now I would have to register them and I suppose you would have to go to Milaca and get them meantime Ill put them in my safety box in the Bank let me know if I shall send them up * * *."

Plaintiff finally admitted that he had written the above quoted letter, but stated that he had forgotten about it. The trial court found that defendant's claim was true; that in violation of defendant's instructions plaintiff bought the $700 bonds referred to; that he never consulted defendant in regard thereto; and that such purchase and the use of defendant's money was wholly unauthorized by defendant. Without question the findings were sustained by the evidence.

The court further found (summarized) that plaintiff knew he had violated a duty owed to defendant and, therefore, for a valuable consideration guaranteed in writing the payment of said bonds at maturity and agreed to pay or cause to be paid with interest in event that the congregation should default, and that he would in lieu of said payment take said bonds over from defendant in such a way as would make defendant whole on account of the purchase of said bonds with his money; that in consideration of plaintiff's promise and guaranty and in reliance thereon, defendant accepted the bonds; that as security for the $700 borrowed by defendant from plaintiff defendant pledged the three bonds in question; that plaintiff continued to hold the bonds as collateral security, but upon default of the congregation in the payment of the bonds, plaintiff and defendant deposited them with the trustee for the purpose of a certain agreement by and between the trustee and a so-called bondholders' committee, and that the bonds are still in the custody of said trustee for the purpose of that agreement; that default was made in the payment of said bonds and interest, and defendant informed plaintiff of such default and plaintiff demanded of him payment of the said $700 loan; that defendant thereupon demanded that plaintiff perform his promise and guaranty, which demand was repeated on numerous occasions; that at all times after said first demand for performance defendant was ready, able, and willing to deliver to plaintiff the bonds referred to and ever since has been and now is so ready, able, and willing; that plaintiff has at all times refused to perform the terms of his guaranty of payment and to save defendant harmless in the premises, and defendant has been damaged in the sum of $700, with interest; that at the time of

accepting the bonds defendant knew nothing of the character, validity, or value of such securities, nor the location of the property therein referred to; that at all said times plaintiff had and professed to have superior knowledge of the facts determining the value of said securities as an investment, and at the time of the purchase thereof by plaintiff with defendant's money plaintiff represented said bonds to be a safe investment; that plaintiff had knowledge and experience in transactions of that kind far greater than that possessed by defendant; that defendant relied not only on the guaranty of plaintiff to make good said securities but also upon the relationship existing between them and upon plaintiff's superior knowledge concerning investments, and by reason of all of such facts defendant trusted plaintiff as his agent and confidential adviser with respect to the use of defendant's money, and at all times gave greater credit to plaintiff's promise to guarantee the payment of said bonds and the purchase thereof from defendant than he otherwise would have done had not plaintiff occupied a fiduciary relationship toward defendant. Those findings have sufficient support in the evidence.

The court further determined that by reason of and in consideration of the facts plaintiff is justly indebted to defendant in the sum of $700, with interest, and defendant is entitled to an offset and recoupment for that sum with interest against the claim of plaintiff for said loan of $700. As conclusion of law the court held that defendant was entitled to judgment decreeing and directing plaintiff specifically to perform his promise to purchase said bonds from defendant for the sum of $700, with interest, less the amount due to plaintiff as set forth in his complaint, and further ordering plaintiff to pay to defendant the difference between the said amounts, and that upon execution by defendant to plaintiff of a formal release and assignment of defendant's interest in said bonds and all rights thereunder, if such instruments be demanded by plaintiff, said judgment to include the sum of $7.93.

Plaintiff by sufficient and proper assignments of error presents the claims contended for by him. We will consider and dispose of them in order.

■ Plaintiff's claim that there was no consideration for the promise made by him is not tenable. Defendant had, at the time plaintiff violated the instructions given him, a cause of action against plaintiff for conversion of the money that had been sent. Because of the promises made by plaintiff he refrained from enforcing his right to recover back the money converted and accepted the bonds in reliance upon the promises made. There was a valuable consideration. The facts in Cruickshank v. Ellis, 178 Minn. 103, 226 N. W. 192, cited by plaintiff, are clearly distinguishable from those in the instant case.

■ The promise by plaintiff to take over (to purchase) the bonds was not one to respond for the debt of another and hence did not come within the statute of frauds. 2 Mason Minn. St. 1927, § 8456. Here there was an original undertaking, supported by a valuable consideration. Plaintiff obligated himself primarily by saying: "I will guaranty this bonds any time you dont want them Ill take them over." This, of course, meant taking the bonds over at the price paid therefor, with interest, and at such a time as defendant might determine.

■ Plaintiff further contends that there was a rescission and estoppel because of the pledging of the bonds to plaintiff in security for the loan and because of the surrender thereof to the bondholders' committee. Everything that defendant did relative to the bonds was done at the request and advice of plaintiff. At the time the loan was made by plaintiff to defendant the bonds were sent to plaintiff and remained in his custody until he deposited the same with the committee, at which time he advised defendant to execute the papers that would be sent to him. Pursuant to that advice defendant signed a letter of transmittal and received a certificate of such deposit (exhibit H). Defendant testified that he would not have signed the letter of transmittal if plaintiff had not advised him to do so and that plaintiff had never requested the delivery of exhibit H back to him. The transaction amounted to no more than a substitution of that certificate of bond deposit for the bonds in question. There was no rescission. Under such circumstances there was no estoppel; at any rate plaintiff suffered no prejudice.

By pledging the bonds as security for the loan defendant did not relinquish his rights under the promises made by plaintiff to him, nor is he estopped from asserting them.

■ Question is raised as to defendant's counterclaim being barred by the statute of limitations. Under the facts here, defendant's cause of action was not barred. There was no definite time for performance of the promise. It was a continuing one, and the statute did not begin to run until defendant had made a demand upon plaintiff and such demand had been refused.

■ The defense was predicated upon plaintiff's promise to guarantee payment of the bonds at maturity; the counterclaim upon plaintiff's promise to purchase the bonds from defendant at the price paid therefor. It is urged that the trial court erred in refusing, early in the trial, to require defendant to elect as to whether he would rely upon the guaranty or the agreement to purchase. The court, after listening to argument of counsel, stated:

"Well, this being a court case and there being no jury present, I am more interested in getting at the true facts than anything else so as to be able to make a proper decision in this controversy, so I will at this time merely take this ruling on the motion to elect under advisement and hear the evidence. * * * I am not going to allow my withholding of the ruling at this time to affect the rights of either party. I will simply hold the matter in abeyance and rule at the proper time on the question."

Just before both parties rested the court granted, over plaintiff's objection, the motion of defendant to amend his answer by adding thereto at the end of paragraph three, which set forth the guaranty, the following:

"Or that he would in lieu of such payment take said bonds over from defendant, that is, take such bonds off of defendant's hands on such terms as would make defendant whole on account of the purchase of said bonds with his money."

The two defenses were not inconsistent. Both might be true. Even if an inconsistency existed, it was not here necessary that de-

fendant be required to make an election. For a full discussion of the question of election of remedies see opinion of Mr. Justice Dibell in McAlpine v. Fidelity & C. Co. 134 Minn. 192, 158 N. W. 967.

We have carefully considered all the arguments advanced and are of opinion that the conclusions of the trial court were correct.

Affirmed.

