**In re ESTATE OF Effa E. FAUSKEE, Deceased.**

No. C6–92–1711.

Court of Appeals of Minnesota.

March 16, 1993.

Review Denied May 18, 1993.

325

David R. Von Holtum, Von Holtum, Malters & Shepherd, Worthington, for appellant Shirley Fauskee, as Personal Representative of the Estate of John Fauskee.

Michael A. LaFond, Orbovich, Fletcher & LaFond, Minneapolis, for respondent Betty

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn.

Atchison, as Personal Representative of the Estate of Effa E. Fauskee.

Harris I. Darling, Mork, H. Darling, Hagemann & Kohler, Worthington, for respondent Estate of Effa E. Fauskee.

Considered and decided by HUSPENI, P.J., and PETERSON and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

This case came before the trial court for hearing on final account and objections for the estate of Effa E. Fauskee. Appellant Shirley Fauskee objected to inclusion in the estate of two promissory notes executed by John Fauskee in favor of Effa Fauskee. The trial court denied the objections and allowed the estate of Effa Fauskee to exercise a right of retainer against John Fauskee's share of the estate because of the promissory notes. We affirm.

## FACTS

Effa Fauskee was the 92–year–old mother of John Fauskee. On May 27, 1982 and April 18, 1983, John borrowed $25,000 from his mother, for a total of $50,000. The loans were evidenced by notes handwritten by John and witnessed by other family members.. Both notes provided for payment on demand. No payments were made on the notes and no demand for payment was made. The April 18, 1983 note provided for 14% interest. Effa Fauskee borrowed the money from a bank at that rate, and John suggested that he repay the same rate. The parties stipulated that the permitted rate under Minn.Stat. § 334.011 (1990) was 13%.

Effa Fauskee died on December 24, 1989. Her daughter, respondent Betty Atchison, is the personal representative for her estate. Atchison and John Fauskee, along with other siblings, are beneficiaries under Effa Fauskee's will. At a family meeting after Effa Fauskee's death, John orally acknowledged the two debts. John died on

Const. art. VI, § 10.

June 22, 1990. His wife, appellant Shirley Fauskee, is the personal representative of his estate.

Appellant objected to the inclusion of John Fauskee's notes in the estate, arguing collection of the debt was barred by the statute of limitations and that one note was void since it called for a usurious interest rate. The estate of Effa Fauskee was allowed a right of retainer on behalf of the estate equal to the amount of John Fauskee's debt pursuant to Minn.Stat. § 524.3–903 (1990). This appeal followed.

## ISSUES

I. Did the trial court err by holding a cause of action on a promissory note accrues from the date demand for payment is made where the parties' intended payment was not due until demand was made?

II. Did the trial court err by holding an oral acknowledgment of a debt did not violate the statute of frauds?

III. Did the trial court err by finding the April 18, 1983 note was not void for usury?

## ANALYSIS

The estate of Effa Fauskee was allowed a right of retainer against a distributee of her estate, John Fauskee, in the amount of his debt to Effa Fauskee, plus accrued interest. *See* Minn.Stat. § 524.3–903 (1990). John would have had the right to raise any defenses he would have had in an action for recovery of the debt. Since John has died, his estate has the right to raise any such defenses. His personal representative, Shirley Fauskee, has raised the defenses of statute of limitations and usury.

## I.

■ The two promissory notes in this case, dated 1982 and 1983, provided for payment on demand. No demand for payment was made. Appellant argues that the notes are negotiable and are subject to the Uniform Commercial Code, which provides that a cause of action on a demand instrument accrues from the date of a demand instrument. *See* Minn.Stat. § 336.3–122(1)(b) (1990). The statute of limitations for such a cause of action is six years. *See* Minn.Stat. §§ 541.01, 541.05 (1990). The trial court found that the statute of limitations on the notes did not begin to run until demand for payment was made. Respondent argues the U.C.C. is not applicable.

The U.C.C. applies to negotiable instruments. Negotiable instruments are defined as writings, signed by the maker containing a promise to pay a sum certain in money, which are payable on demand and are payable to order or to bearer. Minn.Stat. § 336.3–104(1) (1990). The notes in this case meet the first three requirements, but do not contain terms stating the notes are payable to order or to bearer. Prior to enactment of the U.C.C., a note payable to payee and not to order or to bearer was not negotiable. *Penn Mut. Life Ins. Co. v. Utne*, 207 F.Supp. 521, 523 (D.Minn.1962).

Appellant claims the U.C.C. now applies to this type of instrument, citing Minn.Stat. § 336.3–805 (1990), which states:

This article applies to any instrument whose terms do not preclude transfer and which is otherwise negotiable within this article but which is not payable to order or to bearer, except that there can be no holder in due course of such an instrument.

The Minnesota U.C.C. comment to the statute states that it covers non-negotiable instruments which otherwise meet the requirements of a negotiable instrument but are not payable to order or to bearer. Minn.Stat.Ann. § 336.3–805 (West 1966), Minn.Code cmt. Therefore, Minn.Stat. § 336.3–805 applies to the notes, making the notes subject to the U.C.C. and a six-year statute of limitations.

The issue is when does the cause of action on a demand note accrue. Minn. Stat. § 336.3–122(1) (1990) provides:

A cause of action against a maker or an acceptor accrues * * * (b) in the case of a demand instrument upon its date, or, if no date is stated, on the date of issue.

*See also Fljozdal v. Johnson*, 188 Minn. 612, 248 N.W. 215 (1933) (demand note is considered due immediately, and the stat-

ute of limitations on the note begins to run immediately). However, the parties may have a contrary intention, so that the demand note is not due immediately.

"Where the transaction shows an intent that the cause of action will not accrue until actual demand the court will give effect to that intention." Minn.Stat.Ann. § 336.3–122 (West 1966), Minn.Code cmt. (citing *Andrews v. Andrews,* 170 Minn. 175, 212 N.W. 408 (1927)).

> Where, by the contract of the parties, express or implied, the money or debt which is the subject-matter thereof is payable only upon a demand in fact therefor, the statute of limitations does not begin to run until an actual demand for payment is made. The demand, however, must be made within a reasonable time, which is ordinarily the period of the statute of limitations; but, where the parties contemplated a delay in making the demand to some indefinite time in the future, the statutory period for bringing the action is not controlling as to the question of reasonable time.

*Fallon v. Fallon,* 110 Minn. 213, 217, 124 N.W. 994, 996 (1910); *see also Bannitz v. Hardware Mut. Cas. Co.,* 219 Minn. 235, 17 N.W.2d 372 (1945).

The evidence shows that no demand was ever made and that the parties contemplated a delay in payment. Atchison testified Effa Fauskee "did not want to press John when he was having difficulty in his business * * *." The trial court found that "the agreement was that John would repay his mother when he was financially able to do so." The trial court also found:

> Testimony by Betty Atchison revealed that to her knowledge no demand was ever made on the note and that her mother had told her that no demand would be made on the notes until John had become financially able to pay. This testimony is unrebutted.

The evidence shows it was implied in the parties' contract that an actual demand for payment must be made before payment was due; the statute of limitations did not begin to run because no demand was ever made. Therefore, recovery on the notes by Effa Fauskee's estate was not barred by the statute of limitations.

## II.

The trial court also found that John Fauskee's oral acknowledgment of the notes made after the statute of limitations had run tolled the statute of limitations. Appellant argues that such an agreement must be in writing to be enforceable. Minn.Stat. § 541.17 (1990) provides:

> No acknowledgment or promise shall be evidence of a new or continuing contract * * * unless the same is contained in some writing signed by the party to be charged.

However, an oral acknowledgement may estop a debtor from using this defense. *Albachten v. Bradley,* 212 Minn. 359, 3 N.W.2d 783 (1942) (oral acknowledgment before cause of action was barred estopped debtor from raising a statute of frauds defense). Furthermore,

> [a]n extension of time of payment is a valid and binding agreement to delay the enforcement of a promissory note. An extension may be made by an oral agreement without violating the rule excluding parol evidence to contradict, add to, or vary a written contract because the evidence is admitted only to prove a new agreement. Nor does an oral extension violate the Statute of Frauds.

*In re Estate of Giguere,* 366 N.W.2d 345, 347 (Minn.App.1985); *see also Hafiz v. Midland Loan Fin. Co.,* 206 Minn. 76, 287 N.W. 677 (1939).

Appellant attempts to distinguish this case because the oral acknowledgement was made after the statute of limitations had run. However, an extension need not be made before the statute of limitations has run. In fact, the supreme court has stated:

> The rule is well established in this state that an unqualified and unconditional acknowledgement of a debt implies a promise to pay. * * * And it is immaterial whether the acknowledgement precedes or follows the bar of the statute of limitations.

*Reconstruction Fin. Corp. v. Osven*, 207 Minn. 146, 148, 290 N.W. 230, 231 (1940). In that case, the acknowledgement of the debt was in writing, but there was no requirement that the acknowledgement be in writing, and the cases discussed above indicate the statute of frauds is not violated by an oral extension. Furthermore, the oral acknowledgment could have been performed within one year and for that reason, did not have to satisfy the statute of frauds to be enforceable. *Eklund v. Vincent Brass & Aluminum Co.*, 351 N.W.2d 371, 375 (Minn.App.1984), *pet. for rev. denied* (Minn. Nov. 1, 1984). Therefore, the trial court did not err by finding John Fauskee's oral acknowledgment of the notes was enforceable without violating the statute of frauds.

### III.

■ Appellant claims the April 18, 1983 note was void for usury. The note provided for 14% interest. The permitted rate under the Minnesota usury statute at that time was 13%. *See* Minn.Stat. § 334.011 (1990). Usury is defined as taking or receiving more interest on a loan than is permitted by law. *Washington Fed. Sav. & Loan Ass'n v. Baker*, 374 N.W.2d 786, 788 (Minn.App.1985), *pet. for rev. denied* (Minn. Dec. 13, 1985); *see* Minn.Stat. § 334.01 (1990). If a loan is usurious, it is unenforceable and the lender must forfeit interest and principal payments. *Washington*, 374 N.W.2d at 788 (citing *Midland Loan Fin. Co. v. Lorentz*, 209 Minn. 278, 287, 296 N.W. 911, 915 (1941)).

■ In order for a loan to be found void for usury, the court must find

(a) a loan of money or forbearance of a debt; (b) an agreement between the parties that the principal shall be repayable absolutely; (c) the exaction of a greater amount of interest or profit than is allowed by law; and (d) the presence of an intention to evade the law at the inception of the transaction.

*Washington*, 374 N.W.2d at 788 (citing *Schauman v. Solmica Midwest, Inc.*, 283 Minn. 437, 439, 168 N.W.2d 667, 669 (1969)). Absence of one requirement precludes a finding of usury. *Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 69, 93 N.W.2d 690, 695 (1958).

■ Respondent concedes that the first three requirements are met in this case. Appellant argues the fourth requirement of intent to evade the usury laws was also met. In another case, the Minnesota Supreme Court rejected a trial court's finding of no intent to charge a usurious rate of interest, and stated:

The trial court apparently thought that the bank needed to know that it was charging a usurious rate in order to satisfy the intent requirement. This court has said, however, that the required intent "consists in the intent to take or receive more for the forbearance of money than the law permits, and this is true whether or not the taker knows he is violating the usury law." *Cemstone Products Co. v. Gersbach*, 187 Minn. 416, 419, 245 N.W. 624, 625 (1932). Thus, if a lender intentionally charges an interest rate that is in fact usurious, it is presumed that he intends the natural consequence of his act—a usury violation.

*Citizen's Nat'l Bank v. Taylor*, 368 N.W.2d 913, 919 (Minn.1985).

However, if "a transaction is entered into in good faith, with no purpose to evade the usury law, it will be upheld." *Washington*, 374 N.W.2d at 788; *see also Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 219 N.W.2d 641 (1974); *Wetsel v. Guaranteed Mortgage Co.*, 195 Minn. 509, 263 N.W. 605 (1935); *Gould v. St. Anthony Falls Bank*, 98 Minn. 420, 108 N.W. 951 (1952). In *Washington*, a bank charged a rate that was legal if the loan was HUD insured. The loan was treated as HUD insured until HUD rejected a claim on the insurance. Since the loan was not HUD insured, the interest rate on the loan was excessive. This court found the bank's good faith belief that it met the requirements of a HUD insured loan rendered the loan not usurious. *Washington*, 374 N.W.2d at 788.

In this case, the trial court found that "[n]o evidence has been presented that Effa Fauskee possessed an unlawful intent when the interest rate was established."

Effa Fauskee was 92 years old, and was attempting to help her son, who was having financial difficulties. She borrowed the money to lend to John Fauskee from a bank at the 14% rate, and John Fauskee suggested that he repay her at that rate. We agree with the trial court that there was no unlawful intent present in this case. Therefore, the trial court did not err by finding the note was not void for usury.

■ We also agree with the trial court's equitable decision that the rate that could have been charged lawfully, 13%, should be repaid. *See In re Petition for Disciplinary Action Against Kenneth R. Pearson,* 352 N.W.2d 415, 420 n. 4 (Minn.1984) (where as a matter of law there was no unlawful intent at the time of the loan, the loan must be repaid at the lawful rate).

The trial court captured the atmosphere of the entire case when it expressed in its memorandum:

The Court believes it necessary to recognize the specific facts and circumstances of this particular case when applying the law.

This is a family transaction. A son was in financial trouble. His 92–year–old mother was willing to help. She borrowed money at 14% and at his suggestion charged him a rate that was no more nor no less. The rate was usurious.

However, given the reasoning in the *Pearson* case, the Court can find no equitable basis for finding the note void.

Effa Fauskee had no unlawful intent at the time of the transaction. She had a mother's concern for a son. She could have lawfully charged thirteen percent (13%). This is the interest rate that should be repaid.

This is not the world of banking, business, or the Uniform Commercial Code. This is a family transaction. To allow John Fauskee's heirs to be relieved from these obligations would not be equitable.

If Effa Fauskee had intended these monies to be gifts, no notes would have been executed. If she had intended to forgive the notes, she could have done so. Neither was done.

### DECISION

The statute of limitations had not run on the promissory notes since no demand for payment had been made to start the six-year statute of limitations. The oral acknowledgment of debt did not violate the statute of frauds. The trial court did not err by finding the April 18, 1983 note was not void for usury.

Affirmed.