United States v. Nyenekor

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of August, two thousand nineteen.

PRESENT:
> JON O. NEWMAN,
> PETER W. HALL,
> > *Circuit Judges*,
> CLAIRE R. KELLY,
> > *Judge.*\*

———————————————————————

United States of America,

> *Appellee*,

> v.

Carpeah R. Nyenekor, Sr.,

> *Defendant-Appellant*.

**15-1271 (L)**
**16-394 (Con)**

———————————————————————

FOR DEFENDANT-APPELLANT:    Carpeah R. Nyenekor, Sr., pro se, Winton, NC.

FOR APPELLEE:    Scott Hartman, Anna M. Skotko, Assistant United States Attorneys, for Geoffrey S.

———————————————————

\* Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

Berman, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Seibel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Carpeah Nyenekor, Sr., pro se, was indicted on three counts of distribution and possession with intent to distribute cocaine. After a jury trial, he was found guilty of one count of possession with intent to distribute 28 grams or more of cocaine base. The district court sentenced him to 92 months' imprisonment and 5 years' supervised release. He raises multiple issues on appeal. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I.      Motions to Dismiss the Indictment, Double Jeopardy, Speedy Trial**

We review *de novo* denials of a motion to dismiss the indictment. *United States v. Scott*, 394 F.3d 111, 116 (2d Cir. 2005). The district court properly denied Nyenekor's motions to dismiss the indictment. Nyenekor's argument that the indictment was based on false evidence is meritless. Contrary to his assertions, nothing in the record shows that the search warrant authorizing the March 1, 2013 search was ever found to be invalid or that Nyenekor was found not guilty on that basis. Nyenekor's state criminal charges were dismissed on the state prosecutor's motion on September 3, 2013, after Nyenekor was arrested on the federal criminal complaint; the order dismissing those charges makes no mention of false evidence. Nor was there evidence supporting Nyenekor's contention that the Government deliberately failed to preserve evidence.

2

*See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.").

Nyenekor's double jeopardy argument is also meritless. As the Supreme Court recently reaffirmed, the "dual-sovereignty" doctrine holds that "a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute." *Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019). It also applies to the reverse situation: the federal Government may prosecute a defendant if he has already been prosecuted by the state. *Id.* If jeopardy had attached to Nyenekor's state criminal charges, therefore, the Government was not barred from pursuing its own charges. *Id.*

Finally, the prosecution did not violate Nyenekor's rights to a speedy trial under either the Sixth Amendment or Speedy Trial Act. The Sixth Amendment does not apply until a particular "prosecution has begun[,]" *United States v. Marion*, 404 U.S. 307, 313 (1971), and the Speedy Trial Act's indictment clock does not begin to run until the defendant is under "federal arrest" for the federal charges, *United States v. Jones*, 129 F.3d 718, 721 (2d Cir. 1997). Nyenekor was not arrested on the federal charges until August 2013. He was indicted by a federal grand jury in September 2013. Any time prior to these dates does not count in determining his speedy trial rights under the Act.

Nor was the remaining two-year delay after Nyenekor was placed in federal custody a violation of his speedy trial rights. To determine if a defendant's Sixth Amendment right to a speedy trial has been violated, a court must consider the "'[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *United States v. Black*, 918

3

F.3d 243, 254 (2d Cir. 2019) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Nyenekor's competency evaluation was unnecessarily delayed for four-months because of the government's failure to serve the Bureau of Prisons and the U.S. Marshals Service with the district court's order transferring Nyenekor for treatment. Nonetheless, the bulk of the two-year delay mostly stemmed from the initial January 2014 order for a competency evaluation, subsequent evaluations, proceedings in May 2014 and the court's determination of incompetency, the five months Nyenekor was at Federal Medical Center Butner to be restored to competency, and the second and third competency hearings in May and June 2015. Although a delay of over a year is presumptively prejudicial, *see Black*, 918 F.3d at 255, the overwhelming portion of the delay here was valid and necessary to resolve Nyenekor's competency issues. Further, any delays caused by competency hearings or examinations, or when the defendant is considered mentally incompetent to stand trial, are automatically excluded from the speedy trial time computations. 18 U.S.C. § 3161(h)(1)(A), (4).

## II.     Motion to Suppress

We review *de novo* a district court's legal conclusions in a decision on a motion to suppress evidence and review its findings of fact for clear error. *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015). We review *de novo* mixed questions of law and fact. *Id.* Here, the district court properly denied the motion, reasoning that the application did not falsely state the Newburgh police officers had recorded the controlled purchases; the application stated only that the police had monitored them and no recordings could be expected.

On appeal, Nyenekor does not point to any legal or factual error in this decision, but he asserts (1) that the Newburgh police lied on the warrant application to retaliate against him for filing

4

lawsuits against the officers and (2) that the application was not supported with evidence. There is no evidence in the record supporting Nyenekor's argument, however. Detective Michael Loscerbo testified that he was not really aware of the litigation nor was he affected by it, which suggests that he was not motivated to retaliate against Nyenekor. Further, the warrant application was adequately supported by a police officer's affidavit which laid out the factual reasons—the two controlled buys—supporting the officer's belief that cocaine would be found at Nyenekor's residence. This was sufficient support for issuance of the warrant. *See Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." (internal quotation marks, brackets, and ellipsis omitted)).

### III.     Motion to Proceed Pro Se

Nyenekor asserts that the district court violated his Sixth Amendment right to represent himself by denying his request to defend himself pro se. A criminal defendant has a Sixth Amendment right to forgo counsel and represent himself pro se. *See Faretta v. California*, 422 U.S. 806, 819 (1975). Judges are not required, however, to permit a defendant with "severe mental illness to the point where [he is] not competent to conduct trial proceedings by [himself,]" to proceed pro se, and, the court can insist on counsel even if the defendant is competent to stand trial. *Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008). We have not clearly articulated a standard of review applicable to *Edwards* decisions, but our case law suggests that such decision is reviewed for clear error. *See United States v. Scott*, 509 F. App'x 35, 36 (2d Cir. 2013) (summary order) ("The district court did not commit clear error in allowing Scott to proceed to trial pro se.").

5

On review, we determine the district court did not commit clear error by refusing to permit Nyenekor to proceed pro se. It reasoned that Nyenekor's mental illness (antisocial personality disorder) made him fixate on certain legal issues and made him unable to focus on actually preparing a defense or realistically to understand events, and that his mental condition would cause him to disrupt proceedings if he were permitted to represent himself. *See United States v. Barnes*, 693 F.3d 261, 271 (2d Cir. 2012) ("A defendant has no right to engag[e] in serious and obstructionist misconduct, and a court may deny a defendant's request to proceed *pro se* if it finds that the request is manipulative or abusive in some other way[.]" (internal quotation marks and citation omitted)).

Nyenekor argues that the trial involved a simple legal issue and that his prior courtroom behavior had been acceptable. The district court's decision, however, was not based on the complexity of the legal issues, but rather Nyenekor's ability to "keep his head in the game at trial[.]" Although the district court acknowledged that Nyenekor had behaved himself in court, his behavior elsewhere demonstrated that he had the capacity to be disruptive in the courtroom if he wanted to manipulate the proceedings. Nyenekor's legal filings also showed that his antisocial personality disorder affected his ability to understand the proceedings and that he repeatedly fixated on jurisdiction, double jeopardy, and DNA evidence, despite such arguments being meritless. Given this evidence, the district court's decision was not clearly erroneous.

## IV. Evidentiary Issues

Nyenekor the Government failed to disclose certain evidence bearing on the case. The record, however, does not support this argument. During sentencing, the district court briefly addressed Nyenekor's evidentiary challenges and the Government stated that the evidence was disclosed to defense counsel early in the case or as 18 U.S.C. § 3500 material. The fact that

6

Nyenekor's attorney did not introduce or use this evidence does not show that the Government failed to produce it.

Nyenekor argues that the district court should not have permitted the Government to offer his redacted 2009 plea colloquy because it was prejudicial under Federal Rule of Evidence 403 and violated Rule 404(b). Rule 404(b) prohibits parties from introducing evidence that the defendant previously committed a crime to show his propensity to engage in such crimes. However, the evidence is permissible "for another purpose, such as proving . . . intent . . . [or] knowledge[.]" Fed. R. Evid. 404(b)(2). Here, the Government offered the 2009 colloquy for the purpose of showing Nyenekor's knowledge of drug selling and his intent to engage in it. *See United States v. Paulino*, 445 F.3d 211, 222–23 (2d Cir. 2006) (evidence of prior narcotics conviction did not violate Rule 404(b) where it was admitted to prove defendant's knowledge of and intent to distribute drugs found in his bedroom). Nor did the prejudice caused by the colloquy outweigh its probative value because the testimony represented a small fraction of the evidence and did not involve "conduct any more sensational or disturbing than the crimes" with which Nyenekor was charged. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). Further, the district court gave a limiting instruction immediately before the Government offered this evidence and during the jury charge.

## V.     Sufficiency of the Evidence

A defendant challenging the sufficiency of the evidence faces a heavy burden, and a conviction will be upheld if any rational trier of fact could have found the elements of a crime beyond a reasonable doubt. *United States v. Harvey*, 746 F.3d 87, 89 (2d Cir. 2014). A reviewing court "view[s] the evidence in the light most favorable to the government, drawing all inferences

7

in the government's favor," *United States v. Sabhnani*, 599 F.3d 215, 241 (2d Cir. 2010) (internal quotation marks omitted), and applies the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others," *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999). Nyenekor was charged under 21 U.S.C. § 841(a)(1) and (b)(1)(B). Section 841(a)(1) prohibits any person from "knowingly or intentionally . . . possess[ing] with intent to distribute . . . a controlled substance[.]" Section 841(b)(1)(B) imposes specific penalties for violating § 841(a)(1) with 28 grams or more of a mixture or substance containing cocaine base.

Nyenekor argues that the Government failed to offer sufficient evidence that he possessed the cocaine. We are not persuaded. The Government offered evidence that Nyenekor constructively possessed the drugs. "Constructive possession exists when a person has the power and intention to exercise dominion and control over an object, and may be shown by direct or circumstantial evidence." *United States v. Facen*, 812 F.3d 280, 286–87 (2d Cir. 2016) (internal quotation marks omitted). "[M]ere presence at the location of contraband does not establish possession[,]" but "presence under a particular set of circumstances" would be sufficient to show constructive possession. *Id.* at 287 (first alteration in original; internal quotation marks omitted). Occupation of a residence, combined with knowledge of an item's presence, is sufficient to show constructive possession. *See Paulino*, 445 F.3d at 222–23 (construction possession could be shown where evidence showed that defendant used drugs and was sole occupant of room where cocaine was found).

The evidence showed that Nyenekor was the sole occupant of the room in which the drugs were found, that the jacket in which additional drugs were found belonged to him, and that he admitted drugs were dropped off in the room by another dealer for the purposes of distribution.

8

Further, Nyenekor's prior conviction for possessing cocaine showed that he was aware of how cocaine is packaged for distribution. Together, this evidence is sufficient to show that Nyenekor constructively possessed the cocaine with an intent to distribute it.

## VI. Jury Instructions

Nyenekor objects to the jury instructions, arguing that the inclusion of the aiding and abetting theory was akin to charging him with another crime without actually indicting him. We review *de novo* errors in jury instructions. *United States v. Kozeny*, 667 F.3d 122, 130 (2d Cir. 2011). This Court will "reverse only if all of the instructions, taken as a whole, caused a defendant prejudice." *United States v. Bahel*, 662 F.3d 610, 634 (2d Cir. 2011) (internal quotation marks omitted).

"The well established rule in this and other circuits is that a defendant may be indicted for the commission of a substantive crime and convicted of aiding and abetting its commission although not named in the indictment as an aider and abettor." *United States v. Smith*, 727 F.2d 214, 217 (2d Cir. 1984) (internal quotation marks omitted). "An aiding and abetting jury instruction is appropriate where the prosecution makes it known that it intends to proceed on a theory of aiding and abetting and the evidence so warrants." *Id.*

Here, the Government timely sought to include the aiding and abetting theory. It first raised the issue on the second day of the trial before the defense's case began. The Government sought inclusion of the aiding and abetting theory for all three counts because Nyenekor's post-arrest statement suggested that he possessed the drugs to assist another dealer. Further, the evidence supported an aiding and abetting charge. As the district court explained, Nyenekor's post-arrest statements showed that he assisted another drug dealer by connecting the dealer with

9

prospective buyers or by selling on behalf of the dealer. Depending on whether the jury elected to credit the confidential informant, the evidence showed either direct liability or suggested aiding and abetting.

## VII. Sentence

Nyenekor raises two challenges to his sentence. First, he argues that the district court should not have applied an enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. We disagree that the district court exceeded the bounds of its discretion in applying the enhancement. *See United States v. Salim*, 549 F.3d 67, 72 (2d Cir. 2008) (reviewing calculation of guidelines for abuse of discretion). An enhancement under § 3C1.1 applies when "the defendant willfully obstructed or impeded . . . the administration of justice with respect to the . . . prosecution . . . of the instant offense of conviction" and the obstructive conduct related to "the defendant's offense of conviction[.]" U.S.S.G. § 3C1.1. Although refusal to generally comply with a court order is not listed under the examples of obstructive conduct, the list is non-exhaustive. *Id*. cmt. 4. Nyenekor refused to comply with the district court's order compelling him to provide a voice exemplar, which the district court ordered as part of the trial. The conduct related to Nyenekor's offense of conviction because the exemplar would be used by a police officer to identify Nyenekor's voice as the one he heard selling cocaine to the confidential informant. *See Id.* (obstructive conduct can include conduct that attempts to prevent relevant evidence from being introduced, such as by intimidating witnesses or committing perjury).

Second, Nyenekor asserts that he was illegally sentenced to five years' supervised release because the statutory maximum for class C felonies was three years. This argument is meritless. Nyenekor was convicted of violating 21 U.S.C. § 841(b)(1)(B), which carries a mandatory

10

minimum sentence of 4 years' supervised release.   Therefore, the district court's imposition of a

5-year term of supervised release was not illegal.

We have considered all of Nyenekor's remaining arguments and find them to be without

merit.   For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11